## LOUIS T. POLK V. THE STATE.

*No. 3267.    Decided February 17.*

1. **Homicide — Imperfect Right of Self-Defense — Manslaughter.** —If in a rencounter between two parties it should appear that the necessity of taking the life of his adversary was brought about, occasioned, or provoked by defendant's own conduct, then defendant will be guilty of manslaughter; for having provoked the difficulty, his right of self-defense would be imperfect.

2. **Same — Perfect and Imperfect Right of Self-Defense.** —Where A says to B, "You are a G—d damned liar," and B, on the impulse of the moment, resents the insult by striking A with his hand, and A draws a pistol with intent to kill B, and B to save his own life kills A, *held,* manslaughter. Insulting words will not justify an assault, and therefore B was the aggressor in the eye of the law. He was as much guilty of an assault and battery upon A as he would have been had not A given the insult. And though he may not have intended to produce the occasion or provoke the difficulty, yet this would be the reasonable and natural consequence of his act, for which by law he is held responsible, and to the same extent as if he had intended to provoke the difficulty.

3. **Mutual Combat—Charge of Court—Harmless Error.**—See the opinion for a charge on mutual combat which, though erroneous, as there was no such issue in the case, was held harmless error, because there was no possible chance for such charge to have injured appellant.

APPEAL from the District Court of Scurry. Tried below before Hon. J. V. Cockrell.

Under an indictment which charged him with the murder of W. J. Byrd appellant was convicted of manslaughter, and his punishment assessed at two years in the penitentiary.

The facts immediately connected with the homicide are sufficiently stated in the opinion.

*Walton, Hill & Walton, Cowan & Fisher, Thurmond & Yantis,* and *Cowan & Posey,* for appellant.

No brief on file for the State.

HURT, JUDGE.—The appellant stands convicted of manslaughter.

Rogers, a witness for the State, testified, that defendant and deceased were standing at the bar of the saloon, talking. "I walked up by the side of defendant. About that time defendant struck deceased with his fist in his face. The lick staggered the deceased back, and the defendant, when he struck the deceased, immediately stepped back a step or two, and drew his pistol. I grabbed the pistol, and he and I had a scuffle over it. I looked back over my shoulder and saw deceased have a pistol, holding it up. About that time I either let loose the pistol or defendant got it loose, and I stepped back, and the firing began. I was not looking at deceased when he drew his pistol. Both shot about the same time. Don't know who drew his pistol first. Deceased was drunk. Defendant was drinking."

Frost, for the State, testified: "The first I saw was when defendant struck deceased with his fist, and then both drew their pistols and fired. They drew about the same time."

O. Smith, a witness, was behind the bar. The first he saw was when they had their pistols drawn. Byrd [the deceased] shot the first shot. The shots were nearly together.

Isaacs testified, for the defense: "When I went into the saloon I think deceased and defendant were spinning the top. I was sitting by the stove, some six or eight feet from them. The first I noticed of the difficulty was when I heard defendant say, 'Don't do that, Bill,' or 'You can't do that.' I looked up and saw deceased had his pistol out, and defendant was drawing his. Smith caught at deceased's pistol, and I think Rogers caught defendant's. Smith and Rogers were between them. Deceased fired over Smith's shoulder, and shot at defendant. Defendant then fired, and deceased fell."

Lou Smith, a witness for the defense, testified: "I saw the shooting. I heard deceased call defendant a 'damned liar,' and saw defendant strike deceased with his fist or open hand. The parties then drew their pistols. I don't know which drew first. Rogers caught defendant's pistol, and I caught at deceased's pistol. He wrenched loose, and shot at defendant. Defendant then shot deceased."

Richardson, for the defense, testified: "When I went to the saloon they were spinning the top at the bar. I walked up to them and laid my hands on each of their shoulders. I heard deceased say to defend-

ant Louis, 'You owe me 75 cents.' Louis said, 'No, I don't, Bill; I paid that on the drinks.' Deceased then said, 'Well, you owe me 50 cents, any way.' Defendant said, 'Well, you owe me $2.50 that I loaned you at Colorado.' Deceased said, 'No, I don't, Louis.' Defendant said, 'Yes, you do, Bill.' Deceased then called defendant a 'G—d damned liar.' Defendant struck at deceased with his fist, and deceased drew his pistol. Defendant said, 'Don't do that, Bill,' and deceased shot at defendant. Then defendant drew his pistol, and shot deceased.''

Such being the material evidence in the case, the court submitted to the jury the issues of murder upon express malice, of murder of the second degree, manslaughter, mutual combat, and self-defense.

In the brief of counsel for appellant many objections are urged to the charge of the court upon the issue of murder, but the verdict for manslaughter eliminates murder, and it is unnecessary to discuss or determine them. In submitting the issues of manslaughter and self-defense, the charge of the court instructed the jury as to the law as it would be in a case where the homicide occurred in the progress of a mutual combat. As we view the evidence, the question of mutual combat is not presented by any evidence in the case, and it was error for the court to so charge.

The questions remaining in this case are: Did the defendant fire the fatal shot in order to prevent the taking of his own life? If he did, then did the necessity of taking the life of his adversary arise in the progress of a difficulty brought about, provoked, or occasioned by defendant's own conduct? If these are answered in the affirmative by the jury, then the defendant will be guilty of the offense of manslaughter; for, having provoked the occasion, his right of self-defense would be imperfect. But did the homicide occur in the progress of a difficulty provoked and brought on by the acts, conduct, and words of the deceased toward the defendant, and were such acts, conduct, and words of the deceased reasonably calculated to provoke and bring on the difficulty? If this question is answered affirmatively, would the defendant, if he killed his adversary to save his own life, be justified, and his right of self-defense be perfect?

Here we have presented a very nice question. A says to B, "You are a G—d damned liar." B, on the impulse of the moment, resents the insult by slapping or striking A with his hand. A draws a pistol with intent to shoot and kill B. B, to save his own life, kills A. Could B be guilty of an offense less than manslaughter? In the supposed case, B does not intend to provoke the difficulty or produce the occasion; but prompted by a sudden impulse, acts on the spur of the moment and resents the insult by striking A with his hand. This question must be solved by well settled principles of law. Insulting words will not justify an assault, and therefore B was the aggressor in the eye of the

law. He was as much guilty of an assault and battery upon A as he would have been had A not given the insult, and though he may not have intended to produce the occasion or provoke the difficulty, yet this would be the reasonable and natural consequence of his act, for which, by the law, he is held responsible, and responsible to the same extent as if he had intended to provoke the difficulty. In this case, the facts show that the slap or blow was given before A attempted to draw his pistol. But it is contended that the deceased provoked the difficulty by calling defendant "a G—d damned liar." Concede this to be so, it would not alter the rights of appellant. To use such language to a person is not recognized in law as a provocation, when the one so insulted proposes to act under it, or justify himself for the assault and its consequences.

While the charge upon mutual combat may not have been called for, still, if we are correct in the above, there was no possible chance for such a charge to have injured appellant. Why? Because, concede to the fullest extent that the witnesses for the defense gave the correct version of the facts in the case, nothing less than manslaughter could have been the result from an honest jury; for all the witnesses who swear to the fact agree, that when insulted by being called a "G—d damned liar," and before deceased attempted to draw his pistol, appellant struck him; and we hold that the party giving the blow, being the aggressor, would be guilty of manslaughter, and nothing less, though he kills to save his own life.

We have found no reversible error in the record, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.